UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| CARLOS TAPANG, | CASE NO. |
| Plaintiff, | COMPLAINT |
| v. | **JURY TRIAL DEMANDED** |
| T-MOBILE USA, INC., | |
| Defendant. | |

Plaintiff Mr. Carlos Tapang, by and through his counsel, Boris Davidovskiy of Boris Davidovskiy, P.S., complains and alleges based on his personal knowledge with respect to his own acts and on information and belief with respect to all other matters as follows:

## I.   INTRODUCTION

1.1   Mr. Carlos Tapang is a current wireless telephone customer of Defendant T-Mobile USA, Inc. ("T-Mobile"). This is an action for damages and remedies for violations of, *inter alia*, the Federal Communications Act, 47 U.S.C. § 201, arising in part from T-

COMPLAINT - 1

1   Mobile's failure to provide reasonable and appropriate security to maintain the security of
2   and prevent unauthorized access to Mr. Tapang's wireless account.

3   1.2   On or about November 7, 2017, T-Mobile improperly allowed wrongdoers to
4   access to Mr. Tapang's wireless account and, without his authorization, transferred his
5   number to another carrier. T-Mobile was unable to contain this security breach until the next
6   day, enabling wrongdoers to drain Mr. Tapang's cryptocurrency exchange account.

7   1.3   As a result of this breach of security, Mr. Tapang's exchange account was
8   subjected to unauthorized transfers; he was deprived of his use of his cell phone number and
9   required to expend time, energy, and expense to address and resolve this financial disruption
10  and mitigate the consequences; and he also suffered consequent emotional distress.

## II.   JURISDICTION AND VENUE

2.1   This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1367 on the grounds of federal question jurisdiction and supplemental jurisdiction over the state law claims because all the claims are derived from a common nucleus of operative facts and are such that Plaintiff would ordinarily be expected to try them in one action.

2.2   Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) and (c). A substantial part of the events or omissions giving rise to this Complaint occurred in this District. T-Mobile is also headquartered and has its principal place of business in this District. Wireless services subject of this Complaint were entered into in part in this District. T-Mobile has received compensation as a result of its acts and practices in this District.

2.3   Unless this Court permanently restrains and enjoins T-Mobile, T-Mobile will continue to engage in the acts and practices alleged in this Complaint in this District.

COMPLAINT - 2

2.4     Venue is proper in the Western District of Washington at Seattle under Western District of Washington CR 5(e).

### III.     PARTIES

3.1     Plaintiff Carlos Tapang is a resident of King County, Washington. Mr. Tapang entered into a contract with T-Mobile in or about 2015.

3.2     Defendant T-Mobile USA, Inc. is the United States operating entity of T-Mobile International AG & Co., the mobile communications subsidiary of Deutsche Telekom AG & Co. K.G. T-Mobile, USA, Inc.'s headquarters and principal place of business in the United States is in Bellevue, Washington, in the County of King, WA. The practices and acts of T-Mobile as alleged in this Complaint have been "charges, practices, classifications, and regulations" as defined in the Federal Communications Act ("FCA").

3.3     Plaintiff reserves the right to move the Court to convert and certify this action as a class action on behalf of the yet undefined class of individuals residing within Washington and/or elsewhere who were subjected to the same circumstances set forth here.

### IV.     FACTS

4.1     T-Mobile markets and sells wireless telephone service through standardized wireless service plans at various retail locations, online sales, and over the telephone. In connection with its wireless services, T-Mobile maintains wireless accounts enabling its customers to have access to information about the services they purchase from T-Mobile.

4.2     It is widely recognized that mishandling of customer wireless accounts can facilitate identify theft and related consumer harms.

COMPLAINT - 3

LAW OFFICE OF
BORIS DAVIDOVSKIY, P.S.
ATTORNEY & COUNSELOR
6100 219th Street, Suite 480     T: 425.582.5200
Mountlake Terrace, WA 98043     F: 425.582.2222

4.3     Among other things, T-Mobile's sales and marking materials state "we have implemented various policies and measures to *ensure* that our interactions are with you or those you authorize to interact with us on your behalf – and not with others pretending to be you or claiming a right to access your information."[1]

4.4     T-Mobile's sales and marking materials further state that, unless T-Mobile can verify the caller's identity through certain personal information or a PIN if requested by the customer, T-Mobile's policy is not to release any account specific information.

4.5     Despite these statements and other similar statements, T-Mobile fails to provide reasonable and appropriate security to prevent unauthorized access to customer accounts. Under T-Mobile's procedures, an unauthorized person, including T-Mobile's own agents and employees acting without the customer's permission, can be authenticated and then access and make changes to all the information the legitimate customer could access and make changes to if the customer were so authorized. As set forth in this Complaint, T-Mobile also fails to disclose or discloses misleadingly that its automated processes or human performances often fall short of its express and implied representations or promises.

4.6     In or about 2015, Mr. Tapang entered into a service agreement with T-Mobile.

4.7     This agreement was for service on four wireless telephones, for Mr. Tapang, his wife, and his two children.

4.8     On November 7, 2017, as Mr. Tapang and his family were getting ready to bed, his daughter and wife's phones restarted, and their phone data were wiped out.

---

[1] Emphasis added.

COMPLAINT - 4

LAW OFFICE OF
BORIS DAVIDOVSKIY, P.S.
ATTORNEY & COUNSELOR
6100 219th Street, Suite 480      T: 425.582.5200
Mountlake Terrace, WA 98043     F: 425.582.2222

4.9	Mr. Tapang noticed that his phone also lost connection to T-Mobile.

4.10	Mr. Tapang immediately telephoned T-Mobile. After several unsuccessful attempts to reach an operator, he was shocked to learn one of T-Mobile's call centers had cancelled his phone number without his permission and transferred his number to AT&T.

4.11	More specifically, unbeknownst to Mr. Tapang, T-Mobile had transferred control of his phone number to a device under the control of someone else.

4.12	T-Mobile admitted to Mr. Tapang that, based on its records, he did not authorize the cancellation and transfer of his phone number to AT&T. T-Mobile was unable to contain this security breach until the next day or so when T-Mobile was finally able to get Mr. Tapang's phone number back from AT&T.

4.13	Meanwhile, however, as a result of T-Mobile's failure to provide reasonable and appropriate security to prevent unauthorized access to Mr. Tapang's wireless account, after getting control of Mr. Tapang's phone number, wrongdoers were able to change Mr. Tapang's password on one of his cryptocurrency accounts and drain most of the contents— 1,000 units of OmiseGo ("OMG") tokens and 19.6 units of BitConnect coin ("BCC"), which the wrongdoers sold for 2.875 Bitcoin ("BTC") and then transferred out of his account.

4.14	After the incident, BTC price reached more than $17,000.00 per coin.

4.15	Before the incident, Mr. Tapang had specifically asked T-Mobile to add additional security measures on his account in part by enabling a PIN to access his account.

4.16	Mr. Tapang understood that his PIN would be validated as part of any port out requests (transferring of his T-Mobile number to another carrier), including by the new carrier, here, AT&T, before his number could be ported to another carrier.

COMPLAINT - 5

LAW OFFICE OF
BORIS DAVIDOVSKIY, P.S.
ATTORNEY & COUNSELOR
6100 219th Street, Suite 480     T: 425.582.5200
Mountlake Terrace, WA 98043   F: 425.582.2222

4.17     On information and belief, T-Mobile failed to comply with Mr. Tapang's request. Despite having asked T-Mobile for additional security, Mr. Tapang lost his phone number and many thousand dollars' worth of virtual currency.

4.18     By its procedures, practices, and regulations, T-Mobile engages in practices that, taken together, fail to provide reasonable and appropriate security to prevent unauthorized access to its customer wireless accounts, allowing unauthorized persons to be authenticated and then granted access to sensitive customer wireless account data.

4.19     In particular, T-Mobile has failed to establish or implement reasonable policies, procedures, or regulations governing the creation and authentication of user credentials for authorized customers accessing T-Mobile accounts, creating unreasonable risk of unauthorized access. As such, at all times material hereto, T-Mobile has failed to ensure that only authorized persons have such access and that customer accounts are secure.

4.20     Among other things, T-Mobile:

   a. fails to establish or enforce rules sufficient to ensure only authorized persons have access to T-Mobile customer accounts;
   b. fails to establish appropriate rules, policies, and procedures for the supervision and control of its officers, agents, or employees;
   c. fails to establish or enforce rules, or provide adequate supervision or training, sufficient to ensure that all its employees or agents follow the same policies and procedures. For example, it is often possible to persuade one of T-Mobile agents to not apply the stated security policy and allow unauthorized access without providing a PIN. Similarly, on information and belief, T-Mobile agents or employees generally act on their own regardless of what is in the notes of a customer account, failing, among other things, to accommodate customers' security requests;

LAW OFFICE OF
BORIS DAVIDOVSKIY, P.S.
ATTORNEY & COUNSELOR
6100 219th Street, Suite 480     T: 425.582.5200
Mountlake Terrace, WA 98043     F: 425.582.2222

    d.  fails to adequately safeguard and protect its cusomer wireless accounts, including that of Mr. Tapang, so wrongdoers were able to obtain access to his account;

    e.  permits the sharing of and access to user credentials among T-Mobile's agents or employees without a pending request from the customer, thus reducing likely detection of, and accountability for, unauthorized accesses;

    f.  fails to suspend user credentials after a certain number of unsuccessful access attempts. For example, wrongdoers would call numerous times trying to gain access to customer accounts before they finally got an agent on the line that would authorize access without requiring, for example, a PIN;

    g.  fails to adequately train and supervise its agents and employees in such a manner that allows its agents or employees, without authorization or approval, to unilaterally access and make changes to customer accounts as if the customer were so authorized;

    h.  allows porting out of phone numbers without properly confirming that the request is coming from the legitimate customers;

    i.  lacks proper monitoring solutions and thus fails to monitor its systems for the presence of unauthorizes access in a manner that would enable T-Mobile to detect the intrusion so that the breach of security and diversion of customer information was able to occur in Mr. Tapang's situation and continue until after his virtual currency account was compromised;

    j.  fails to implement simple, low-cost, and readily-available defenses to identity thieves such as delaying transfers from accounts on which the password was recently changed or simply delaying transfers from accounts to allow for additional verifications from the customers; and

    k.  fails to build adequate internal tools to help protect its customers against hackers and account takeovers, including compromise through phone porting and wrongdoing by its own agents or employees acting on their own behalf or on behalf or at the request of a third party.

COMPLAINT - 7

4.21    By the security practices and procedures described here, T-Mobile established user credential structures that created an unreasonable risk of unauthorized access to customer accounts, including that of Mr. Tapang.

4.22    On information and belief, T-Mobile has long been aware about the security risks presented by, *inter alia*, its weak user credential structures or procedures. From prior attacks on customer accounts, T-Mobile has long had notice of those risks. In addition, T-Mobile did not use readily-available security measures to prevent or limit such attacks.

4.23    As a result of T-Mobile's faulty security practices, an attacker could easily gain access to a customer's account and then use it to gain access to the customer's sensitive information such as bank accounts or virtual currency accounts, among other things.

4.24    As such, T-Mobile's security measures were entirely inadequate to protect its customers, including Mr. Tapang.

4.25    Lack of adequate security in T-Mobile's systems, practices, or procedures enabled the wrongdoers to access Mr. Tapang's wireless account, which then enabled the wrongdoers to access his virtual currency account and possibly other sensitive information.

4.26    As such, T-Mobile failed the responsibility it owed to Mr. Tapang to protect his account and his phone number. Even if the subject incident was due to an "inside" job or human performance falling short, T-Mobile is responsible for its agents. And, while T-Mobile can outsource customer service functions, T-Mobile cannot transfer accountability.

4.27    Had T-Mobile provided adequate account security or exercised reasonable oversight, Mr. Tapang would not have lost his phone number or otherwise been damaged.

COMPLAINT - 8



 4.28 Making matters worse, Mr. Tapang is not the only T-Mobile customer to suffer as a result of T-Mobile's failure to ensure adequate security of its customer accounts.

 4.29 Set forth below is a sample of complaints founds on the Internet:

<u>Posted By: sunshine2004 on January 16, 2018</u>

"Hackers were able to get access to my account information and phone number due to a T-mobile security breach from Oct. I was not notified at all as a customer. They added a line to my account without me knowing, then ported my number to their phone, disabled my network, figured out who my bank account was with, reset my username and password for my bank via text verification that they received and did a bunch of online money transfers. THIS IS UNACCEPTABLE tmobile. If you had a security breach all customers should have been notified to take the necessary precautions. There is a youtube video on how to hack tmobile SIM cards - ***?! We can't talk to the fraud department, all we can do is speak to a customer service rep to relay the information and I probably won't ever get a call back about it. I've been a customer for over 10 years. There has to be some sort of responsibility on your part. Because hackers were able to get info through your systems I have to go through a ton of mess with my bank account and all accounts associated with it. The worst part is, I only found out this originated from tmobile from my banking specialist. She said there has been so many fraud claims filed due to the tmobile security breach and asked if I was with tmobile. Everything aligned and it all made sense after she said that. I started looking on the community posts and there are numerous posts about this exact scenario."

<u>Posted By: daes21 on January 23, 2018</u>

"This same thing happened to me just last night and thankfully I caught within a couple of hours and my bank caught it within an hour and froze my accounts pending verification from me. It frustrates me that I was not notified by Experian or T-Mobile that my information may have been compromised.  I was able to have the number returned to me, and I also added the port validation code for an extra layer of protection, but quite frankly it's a little too late for that curtesouy [sic] to be offered. Had I been made aware of the situation when it happened and that service had been offered to me then, then I bet a lot of this fraudulent activity would've been prevented. As a business you should always strive to be proactive versus retroactive."

<u>Posted By: magenta3502854 on December 20, 2017</u>

"I have been a loyal customer with T-Mobile for over eleven years, and I wish they reciprocated such loyalty and was transparent with their customers in letting them know that some personal information was compromised by hackers a few months back.  I learned my lesson the hard way, when my cellular number attached to my

COMPLAINT - 9

accounts was ported without my knowledge and several fraudulent banking transaction occurred exhausting my bank account. My cellular phone number had no service last Sunday, I messaged T-Mobile, and I went into the store, the service was restored back on my phone but during that time unauthorized banking transactions occurred, because an imposter was able to use my cell number to receives text codes. My cell number was suspended, without any explanation, I went to the T-Mobile store to verify my identity. But according to the representatives T-Mobile Fraud Department, have no direct number, that department will contact you up to 72 hours. I went into the store and they actually charged me $30. for a prepaid card, talk about getting victimized twice. Since the incident no one contacted me. Anyone have any ideas how to proceed..."

Posted By: perxam on March 26, 2017

"How can I prevent fraudulent porting of my phone number?

My friend's T-Mobile number got ported out and the fraudulent porting happened with just his account number and address."

Posted By: thefrostking on September 11, 2017

"I just got off the phone with a T-Mobile support rep and a Tech expert did not have answers as to how our accounts can be further secured after the Equifax hack.

The Equifax hack is a bigger deal than others because this time names, addresses, SSNs, and driver licenses were stolen, not simple stuff like emails and credit cards.

Nothing is stopping somebody from calling up with up with my name and sovial, switching an active SIM card to one owned by the malicious person and then bypassing two-factor authentication (on my banks, social networks, etc) because my phone number has been changed to a new device.

This is needs to be brought to T-Mobile's attention."

Posted By: Sean Gallagher on October 11, 2017

"A bug disclosed and patched last week by T-Mobile in a Web application interface allowed anyone to query account information by simply providing a phone number. That includes customer e-mail addresses, device identification data, and even the answers to account security questions. The bug, which was patched after T-Mobile was contacted by Motherboard's Lorenzo Franceschi-Bicchierai on behalf of an anonymous security researcher, was apparently also exploited by others, giving them access to information that could be used to hijack customers' accounts and move them to new phones. Attackers

COMPLAINT - 10

could potentially gain access to other accounts protected by SMS-based "two factor" authentication simply by acquiring a T-Mobile SIM card.

The weakness of the application interface in question, which hosted on wsg.T-Mobile.com, had become so well known to cybercriminals that someone even created a tutorial video on YouTube showing how to exploit it, as Franceschi-Bicchierai reported. One source told him that the bug had been used in attempts to take over 'desirable social media accounts.'"

4.30    After the incident, Mr. Tapang sent a letter to T-Mobile explaining the predicament and trying to resolve this matter. T-Mobile has failed to respond to this letter.

4.31    Mr. Tapang believed that T-Mobile's actions were illegal. As such, he sought assistance of counsel.

4.32    As a direct consequence of T-Mobile's actions or inactions, Mr. Tapang has suffered and continues to suffer actual damages, including: (a) lost time; (b) embarrassment and humiliation; (c) aggravation and frustration; (d) fear; (e) anxiety; (f) financial uncertainty; (g) unease; (h) emotional distress, and (i) expenses, including missed work, delayed projects, postage expenses, and attorney's fees and costs.

## V.    FEDERAL COMMUNICATIONS ACT

5.1    Plaintiff re-alleges the foregoing allegations and incorporates these allegations by reference as if fully set forth herein.

5.2    The FCA regulates interstate telecommunications carriers such as Defendant.

5.3    Defendant is a common carrier engaged in interstate communication by wire for the purpose of furnishing communication services within the meaning of section 201(a) of the FCA. As "common carrier," Defendant is subject to the substantive requirements of sections 201 and 202 of the FCA.

COMPLAINT - 11

LAW OFFICE OF
BORIS DAVIDOVSKIY, P.S.
ATTORNEY & COUNSELOR
6100 219th Street, Suite 480    T: 425.582.5200
Mountlake Terrace, WA 98043    F: 425.582.2222

5.4     Under section 201(b), common carriers may impose only those practices, classifications, and regulations that are "just and reasonable." And, under section 202(a), common carriers are prohibited from making any unjust or unreasonable discrimination in "practices, classifications, regulations, facilities, or services."

5.5     Should a common carrier "omit to do any act, matter, or thing in this chapter required to be done," section 206 dictates that the "common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation ... together with a reasonable counsel or attorney's fee[.]"

5.6     Defendant's conduct, as alleged here, constitutes a knowing violation of section 201(b) and section 202(a). Further, under section 217, Defendant is also liable for the acts, omissions, or failures, as alleged in this Complaint, of any of its offers, agents, or other persons acting for or employed by Defendant.

5.7     Additionally, Defendant is a "telecommunications carrier" within the meaning of section 222, which requires every telecommunication carrier to protect, among other things, the confidentiality of proprietary information of, and relating to, customers.

5.8     Defendant's conduct, as alleged here, constitutes a knowing violation of section 222. On information and belief, Defendant disclosed, without Plaintiff's approval, Plaintiff's proprietary information to a third party or parties for reasons other than for emergency services. Defendant also improperly permitted access to Plaintiff's customer proprietary network information in Defendant's provisions of its services.

5.9     As a direct consequence of Defendant's violations of the FCA, Plaintiff has been damaged and continues to be damaged in an amount to be proven at trial.

COMPLAINT - 12

LAW OFFICE OF
BORIS DAVIDOVSKIY, P.S.
ATTORNEY & COUNSELOR
6100 219th Street, Suite 480     T: 425.582.5200
Mountlake Terrace, WA 98043     F: 425.582.2222

## VI.   BREACH OF CONTRACT

6.1     Plaintiff re-alleges the foregoing allegations and incorporates these allegations by reference as if fully set forth herein.

6.2     Plaintiff entered into a contract both express and implied with Defendant.

6.3     Defendant offered to provide wireless phone service in consideration of payment for services from Plaintiff. Under the terms of the agreement, Plaintiff was required to pay in full the agreed-to charges submitted to him on his bills. Failure to pay in full would cause a breach of contract and discontinuance of wireless telephone service, among other things. Plaintiff accepted the offer of services from Defendant and performed all the conditions, covenants, promises, and agreements required of him under the terms of the contract, or all conditions precedent have otherwise occurred or been waived.

6.4     Among other things, the express and implied terms of the contract were that Defendant would provide reasonable and appropriate security to prevent unauthorized access to his wireless account or otherwise safeguard and protect Plaintiff's private and confidential account information and not transfer his phone number to anyone without his express authorization.

6.5     Defendant has failed, neglected, and refused, and continues to fail, neglect, and refuse to perform its part of the contract or to tender such performance.

6.6     In the absence of such implied and express contract terms, Plaintiff would have acted differently in his purchasing decision or would not have agreed to entered into a contract with T-Mobile. Nor would he have entered into the contract if T-Mobile had properly disclosed to him the true extent of its account security measures or lack thereof.

LAW OFFICE OF
BORIS DAVIDOVSKIY, P.S.
ATTORNEY & COUNSELOR
6100 219th Street, Suite 480     T: 425.582.5200
Mountlake Terrace, WA 98043     F: 425.582.2222

6.7     As a direct consequence of Defendant's breach of the contract, Plaintiff has been damaged and continues to be damaged in an amount to be proven at trial.

### VII.     NEGLIGENCE

7.1     Plaintiff re-alleges the foregoing allegations and incorporates these allegations by reference as if fully set forth herein.

7.2     Defendant owed Plaintiff a duty of, *inter alia*, care in the handling and safeguarding of his customer account for the purposes of providing wireless services.

7.3     Defendant breached the duties it owed to Plaintiff.

7.4     As a direct consequence of Defendant's negligence, Plaintiff has been damaged and continues to be damaged in an amount to be proven at trial, no part of which has been paid.

### VIII.     WASHINGTON'S CONSUMER PROTECTION ACT

8.1     Plaintiff re-alleges the foregoing allegations and incorporates these allegations by reference as if fully set forth herein.

8.2     Under the Washington Consumer Protection Act ("CPA"), RCW 19.86 *et seq.*, "unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. To prevail in a private claim under the Act, a plaintiff must establish five elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; and (5) causation.[2]

---

[2] *Hangman Ridge Training Stables, Inc v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986).

COMPLAINT - 14

1   8.3     Even minimal or nominal damages constitute "injury" under the CPA.[3] No monetary damages need be proven and that non-quantifiable injuries, such as loss of goodwill would suffice.[4]

8.4     Defendant's improprieties, violations, and misrepresentations, as alleged in this Complaint, constitute unlawful, deceptive, and unfair business acts or practices within the meaning of the CPA.

8.5     Defendant, by and through its agents, employees, policies, and procedures has engaged in deceptive acts and practices, unfair acts and practices, and unfair methods of competition that have caused "injury," as that term is defined in the relevant caselaw, including actual and statutory damages, to Plaintiff who is meant to be protected under the CPA from such unfair, false, and deceptive trade practices.

8.6     Defendant's violations include but are not limited to falsely advertising security measures Defendant did not honor and failing to provide adequate reasonable and appropriate security to prevent unauthorized access to consumer accounts.

8.7     Making matters worse, Defendant's business practices had the capacity to affect members of the public and occurred in the course of its business. Additional plaintiffs may have been injured in the same manner as Plaintiff in this case.

8.8     But for Defendant's violations of the CPA, Plaintiff would not have the established injuries.

//

---

[3] *Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27, 57 (2009).
[4] *Nordstrom, Inc. v. Tampourlos*, 107 Wn.2d 735, 740 (1987).

COMPLAINT - 15

## IX.     NEGLIGENT HIRING, RETENTION, AND SUPERVISION

9.1     Plaintiff re-alleges the foregoing allegations and incorporates these allegations by reference as if fully set forth herein.

9.2     At all times material hereto, Defendant's agents, officers, and employees, including those directly or indirectly responsible for or involved in transferring Plaintiff's phone number to another carrier were under Defendant's direct, supervision, and control.

9.3     Defendant further assumed this duty by holding its officers, agents, and employees out to the public as competent representatives.

9.4     On information and belief, Defendant negligently retained, controlled, trained, and supervised its agents and employees when Defendant knew or should have known they posted a security threat. Defendant knew or should have known that its agents or employees would allow unauthorized access its customer accounts, including that of Plaintiff.

9.5     On information and belief, Defendant negligently retained, controlled, trained, and supervised its agents and employees so they committed the wrongful acts complained of herein against Plaintiff and other members of the public. On information and belief, Defendant failed to properly control and supervise them to ensure customer account safety.

9.6     It was foreseeable to Defendant its agents and employees would compromise customer account safety or engage in other acts complained of here. Despite this knowledge, Defendant failed to exercise reasonable care to supervise or control its agents and employees. On information and belief, Defendant engaged in the acts alleged herein and/or condoned, permitted, authorized, and/or ratified the conduct of its agents and employees.

COMPLAINT - 16



LAW OFFICE OF
BORIS DAVIDOVSKIY, P.S.
ATTORNEY & COUNSELOR

6100 219th Street, Suite 480     T: 425.582.5200
Mountlake Terrace, WA 98043     F: 425.582.2222

9.7     As a direct result of Defendant's negligent hiring, control, retention, and supervision, Plaintiff has suffered damages in an amount to be proven at trial.

### X.     NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

10.1    Plaintiff re-alleges the foregoing allegations and incorporates these allegations by reference as if fully set forth herein.

10.2    Defendant could foresee that its actions would harm Plaintiff.

10.3    Defendant had a duty to Plaintiff.

10.4    Defendant breached its duty to Plaintiff.

10.5    Defendant made false and material misrepresentations regarding its security measures and failed to establish and implement reasonable policies and procedures governing the creation and authentication of user credentials for persons accessing Defendant's databases and customer information.

10.6    Defendant harassed Plaintiff by engaging in the above-described actions, including by inducing Plaintiff to select Defendant's services, promising to keep his wireless account secure, but transferring his phone number to another carrier without his permission, causing him to incur substantial financial loss.

10.7    Defendant's actions have resulted in severe emotional distress and/or garden variety emotional distress for Plaintiff, and Defendant's reckless disregard for Plaintiff's customer account has significantly deteriorated Plaintiff's health.

//

//

//

COMPLAINT - 17

LAW OFFICE OF
BORIS DAVIDOVSKIY, P.S.
ATTORNEY & COUNSELOR

6100 219th Street, Suite 480    T: 425.582.5200
Mountlake Terrace, WA 98043    F: 425.582.2222

## XI.   INJUNCTIVE RELIEF

11.1   A plaintiff may seek injunctive relief for violations of the CPA.[5]

11.2   Plaintiff seeks an Order enjoining Defendant from handling customer accounts, including that of Plaintiff, in the unlawful manner described above.[6]

11.3   Plaintiff also seeks an Order enjoining Defendant from the above-described unlawful activities under the CPA.

11.4   Plaintiff has reason to believe these actions make up a pattern and practice of behavior and have affected other individuals similarly situated.

11.5   Injunctive relief is necessary to prevent further injury to Plaintiff and to the general public.

11.6   Accordingly, the Court should issue the requested injunctive relief.

## XII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

12.1   Judgment against Defendant for actual damages;

12.2   Statutory damages for FCA violations;

12.3   Treble damages under RCW 19.86.090, calculated from the damages determined by the Court;

12.4   Award of reasonable attorney fees and reimbursement of all costs for the prosecution of this action under RCW 19.86.090 and the FCA;

12.5   Injunctive relief under RCW 19.86.090 as described above;

---

[5] RCW 19.86.090.
[6] *Scott v. Cingular Wireless*, 160 Wn.2d 843, 853 (2007).

COMPLAINT - 18

LAW OFFICE OF
BORIS DAVIDOVSKIY, P.S.
ATTORNEY & COUNSELOR

6100 219th Street, Suite 480    T: 425.582.5200
Mountlake Terrace, WA 98043    F: 425.582.2222

12.6 Pre- and post-judgment interest on any amounts awarded;

12.7 Punitive damages as applicable; and

12.8 Such other and further relief as the Court deems just and proper.

## TRIAL BY JURY

Under the seventh amended to the Constitution of the United States of America, Plaintiff is entitled to, and demand, a trial by jury.

DATED this 4th day of February, 2018

**BORIS DAVIDOVSKIY, P.S.**

/s/ Boris Davidovskiy
_____
Boris Davidovskiy, WSBA #50593
Boris Davidovskiy, P.S.
6100 219th Street SW, Suite 480
Mountlake Terrace, WA 98043
Telephone: (425)582-5200
Fax: (425)582-5222
E-mail: boris@davidovskiylaw.com
Attorney for Plaintiff

COMPLAINT - 19